ORLEANS,
*August*,
1839.

STATE *v.* JOHN L. BARTLETT.

The statute requiring the clerk to make a minute of " the true day, month and year," when presented in court, upon all informations and indictments, does not require that the name of the month should appear in the minute, if from the records of the whole term, it admits of no doubt, at what time the minute was made.

One, who feloniously takes property in the Province of Canada, and brings it into this state, is guilty of larceny, and may be here tried and convicted of the offence.

INDICTMENT, for stealing two oxen. Plea, Not Guilty.

Upon the trial in the court below, testimony was introduced tending to show that the respondent stole the oxen, in the Province of Lower Canada, and drove them into this county where he sold them.

The respondent contended that, though the jury should find the facts which the testimony tended to prove, still the indictment could not be maintained. But the court charged the jury, that if they found, from the testimony, that the oxen were stolen by the respondent, in Canada, and were driven by him into this county, the indictment was sustained. To the charge of the court, the respondent excepted. The jury returned a verdict of guilty. After verdict, the respondent filed a motion in arrest of judgment, because the minute made by the clerk of the court, upon said indictment, did not show the " day, month and year" when it was filed. The minute of the clerk was as follows. " Orleans county court, Dec. T. 1838. Received and filed this 29th 1838."

The court overruled the motion, to which the respondent also excepted.

*Cooper & Redfield,* for respondent.

The court below erred in their charge to the jury. Before the Stat. of 13 Geo. 3d, ch. 31., the courts of one county, in Great Britain could not take cognizance of a *larceny* committed in another part of the United Kingdom, even though the stolen property was brought into the county where the bill of indictment was found. Hawk. P. C. 217.c . 33, sec. 53. But by the Statute of 7 and 8 Geo. 4, c. 29, it is enacted that the thief may be tried in any *county* where he is found with the *stolen goods,* Rosc. Cr. Ev. 522. But we *no where* find that larceny committed in

one distinct independent government, could be indictable in another government, though the stolen property was brought into the latter—that larceny, committed in France, could be punished in England, Ros. Cr. Ev. 522.   2 Russell on Crimes, 175, 6.   Notwithstanding the English statutes, granting jurisdiction, it is held in England, that, " where goods are stolen in  Jersey, an island subject to the British Crown, and carried into an English county, it *will not* render the offender indictable *there*."   1 Moody, Cr. C. 349. Rosc. Cr. Ev. 522.   11 Com. L. R. 341.

Larceny, committed in one of the United States, is not punishable in another, though the thing stolen be brought into the latter state.   *State* v. *Brown*, 1 Heyw. R. 100. *People* v. *Gardner*, 2 Johns. R. 477.   *People* v. *Schenck*, do. 494. 5 Binn. 617.   Story's Con. of Laws, page 516, 17.

In the case which has been so much relied upon, 2 Mass. R. 14., where goods were stolen in New Hampshire, and carried into Massachusetts,  the court sustained the indictment, expressly on the analogy between the relation of these United States, and the several counties of England.   In delivering the opinion of the court, judge Parker says, " it appears to me that the common law doctrine, respecting counties, may well  be extended by analogy to the case of states united as these are, under one *general government*." Rosc. Cr. Ev. 522.   Story's Con. Laws,  516, 17.   *Rex* v. *Ball*, 1 Am. Jurist, 297, opinion delivered by Chief Justice Reid of Canada, " that the laws of *Canada*, could take no cognizance of crimes committed in another government." 2 N. Y. Digest, 12, 15.

If this court takes cognizance of this offence, the respondent must be  punished by the laws of Canada. Story, Con. Laws, 519.

If a felon steal property in *one* county, and carry it into another, and be indicted in the latter, and tried, an acquittal or conviction would be a *bar* to any subsequent indictment in the former county.   But the analogy does not hold in the case of distinct governments.   Can offenders, then, be tried and suffer *several* punishments, for the same offence ?   The idea is preposterous.

The  motion in arrest should  prevail.   Statute, p. 289. sec. 5.

ORLEANS,
*August*,
1839.

State
*v.*
Bartlett.

ORLEANS,
*August,*
1839.

State
*v.*
Bartlett.

*S. Sumner*, State's attorney, for the prosecution, contended, that it has ever been the pratice in England and in this country, where stolen goods were carried from one county to another, to indict the offender in either county, "for the continuance of the asportation is a new caption." Rosc. Cr. Ev. 520. 1 Hale P. C. 504. 4 Bl. Com. 305.

The courts in Massachusetts have decided that if the property is stolen in another state and carried into Massachusetts, the crime is punishable there. 1 Mass. R. 115. 2 do. 14.

The same doctrine has been adopted in Connecticut, and by this court in the case of *State* v. *Mockridge*, not reported. Mockridge was indicted in Chittenden county for a theft committed in New York, of goods brought by him into this state.

The several states are sovereign and independent, each of the other, in the administration of their laws and in the punishment of crime, and there can be no reasonable distinction between a case where goods are stolen in one state and carried into another, and one where they were stolen in a foreign government, and brought here.

In the present case, the owner of the oxen could take them from the purchaser, and the loss of the property would fall upon one of our own citizens. To hold that the offence could not be punished here, would be virtually licensing theives from a foreign government to take refuge among us, and defraud our citizens of their property.

The motion in arrest was correctly overruled, for the requisitions of the statute were substantially complied with by the clerk. The figures "29" could have reference to no other month, than the month of December, in which the court was in session when the bill was found.

The opinion of the court was delivered by

REDFIELD, J.,—The motion in arrest of judgment, founded upon the insufficiency of the minute, made by the clerk, upon the indictment, at the time it was found by the grand jury, does not seem to be well founded. The minute was in this form ; "Received and filed this 29th 1838," properly signed by the clerk. In determining upon the sufficiency of the pleadings, on motion in arrest, which always preceeds

upon some alleged defect in the record, the court will always look into the whole record. The object of the statute, in requiring this minute to be made by the clerk, of the " true day, month and year," when the indictment is found, is obviously to put it in the power of the court to determine, with certainty, whether the offence is barred by the statute of limitations. If the minute is sufficient to answer all the purposes, for which it is required, any verbal departure from the precise requisitions of the statute ought not to be held fatal to the proceedings. In the present case, although the word "month" is not found in the minute of the clerk, nor yet, the word "day," as expressly required by the statute; still, if the minute, by reference to the records of the term, will admit of no possible misapprehension, it is sufficient. The day named is the " 29th." This must be either the " 29th" day of the term, or of some month during the term, as the minute is thus prefaced, "Orleans county court, Dec. T. 1838 ;" then follows the minute already recited. By reference to the record, it appears there were not so many days in that term, it could not then be the " 29th" day of the term. The term was begun and ended in the month of December, and was holden until after the "29th" "day" of that "month." The minute, thus interpreted, could only signify the " 29th" day of the month of December, " 1838." To arrest the judgment for this defect, would be a degree of nice criticism, which we could not justify to ourselves.

The only remaining ground urged by the respondent's counsel is, that an indictment for larceny cannot be sustained here, where the original caption was in the Province of Canada. If this question were entirely new, and to be now decided upon the weight of authority, at common law, I confess I should incline to the view taken by the respondent's counsel. For it is expressly laid down by all the English law writers upon this subject, that " if the original taking be such whereof the common law cannot take cognizance, or if the goods be taken at sea, the thief cannot be indicted of the larceny in any county into which he shall carry them." 2 Russell, on Crimes 175. The case of the *Pirates,* 3 Inst. 113. 1 Hawk. P. C. ch. 33, §32. The same exceptions obtained in regard to goods taken in any other part of the United Kingdom, and brought into any county in England. *Rex* v

*Anderson*, 2 East's P. C. ch. 16, §156, p. 772. These obstacles were removed by the statute of 45 and 54 Geo. 3 and 7 and 8 Geo. 4.

But in this state, the rule has been too long settled, and recognized by too long and uniform a course of practice and decision, to be now changed, unless it be by act of the legislature. We think, too, that the reasons are quite sufficient why the law, upon principles of mere policy, should not be changed.

Larceny consists in the felonious taking and carrying away of the goods of another. It implies a forcible violation of the right of the owner in regard to possession, as well as property ; and that this should be done secretly or feloniously. Now precisely the same reason, found in all the books, why the offender is guilty of larceny, in every county, into which he conveys the goods ; viz ;—" that every moment's continuance of the trespass and felony amounts to a new caption and asportation," will apply to the present case with the same force of its original use. Hence it has been decided, that where goods are taken in one of the United States and brought into another, the offender may be indicted in the latter state, and there tried. *State* v. *Mockridge*, decided by this court, some years since, in the county of Chittenden, and not reported. The same rule obtains in some of the other states. *Commonwealth* v. *Cullins*, 1 Mass. R. 116. *Commonwealth* v. *Andrews*, 2 do. 14. *State* v. *Ellis*, 3 Conn. R. 185. New York, and North Carolina have decided otherwise.

It is believed no good reason can be urged, why the rule should apply, as between the American states, and not extend to all countries. These states, so far as punishment for crimes is concerned, are as foreign to each other as distinct nations. There could be no pretence, that in the case of Mockridge, the stealing of money, in the state of New York, was any more punishable here, than if he had taken it in Canada, or even in a country where there is no law on the subject. It could only be upon the ground, that the bringing the money into this state " amounted to a new caption and asportation," like the carrying of goods, feloniously, through more than one county, which is indictable in either county. Such has been the long established practice in this

ORLEANS.
*August,*
1839.

State
*v.*
Bartlett.

state.  A case is mentioned by one of my brethren, as having occurred, while the late judge Tichenor was Chief Justice of this court, where the original taking was in Canada, and the offender was convicted here.  Other cases of a similar character are known to have occurred, in the state, at different periods.  We are not disposed to relax the rule.  The argument, that it might operate severely upon offenders, who took property in a remote section of the Union, and, after having carried it through many intervening states, should finally be arrested, having passed, perhaps, a jurisdiction, where larceny was a capital offence, is one of those arguments *ab inconvenienti,* which are always specious, but not always safe to be relied upon.  It is sufficient to say, that no country, not absolutely barbarous, would ever presume to punish any one, a second time, for the same offence.  Again, it would never be in the power of a second jurisdiction, to punish the same offence, unless the first jurisdiction, after having inflicted the utmost punishment, should surrender the expiated offender, to be still further punished, which is not a supposable case, in any christian country.

The judgment of the court is, that the respondent take nothing by his exceptions and motion.

No further objections being urged he was sentenced to confinement in the state prison.