**Greg SAATHOFF, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7078.**

Court of Appeals of Alaska.

Nov. 19, 1999.

---

Paul E. Malin, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Marcelle K. McDannel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, J.

In the summer of 1988, Greg Saathoff was working as a cab driver in Anchorage. A man he did not know approached him and offered to sell him an old rifle for $100.00. When Saathoff demurred, the man lowered his price to $35.00. Despite his suspicion that the rifle might be stolen property, Saathoff purchased the weapon. A short time later, Saathoff's suspicion was confirmed: a weapons appraiser informed him that the rifle was a valuable antique, worth approximately $500.00. Even though Saathoff was now sure that the rifle was stolen, he kept it.

Nine years later, in the summer of 1997, Saathoff used the rifle to shoot a neighbor's dog. When the neighbor responded by trying to shoot Saathoff, Saathoff summoned the police. The police arrived and secured all the weapons at the scene—including the antique rifle. The officers checked the serial number of the rifle and found that the weapon had been reported stolen in 1988. After Saathoff disclosed that he had purchased the rifle from an anonymous seller for $35.00, he was charged with second-degree theft.

Under Alaska's statute of limitations, AS 12.10.010, a prosecution for second-degree theft must be commenced within five years of the commission of the offense. Saathoff claims that, because of this five-year limitation, the State could not charge him in 1997 for a theft he committed in 1988.

The State argues that Saathoff's prosecution was timely because Saathoff's offense was "theft by receiving" as defined in AS 11.46.190(a). According to the State, the offense of "theft by receiving" continues for as long as the person retains the stolen property. The State contends that, although Saathoff's offense may have begun in the summer of 1988, his offense continued until the summer of 1997, when the police seized the rifle.

In resolving this debate about the nature of theft by receiving, we are guided by the rule of construction expressed by the legislature in AS 12.10.030. The pertinent part of this statute declares that, for purposes of calculating the period of limitation,

[a]n offense is committed either when every element [of the offense] occurs, or, if a

legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated.

This statute directs us to construe offenses as occurring at one particular time or as comprising one discrete episode, unless it "plainly appears" that the legislature intended to define the offense as a continuing course of conduct.

As defined in AS 11.46.190(a), theft by receiving is committed when a person "buys, receives, retains, conceals, or disposes of property ... with reckless disregard that the property was stolen". The State focuses on the fact that one of the five prohibited acts is "retaining" stolen property. The word "retain", when applied to property, normally connotes a continuing possession or withholding.[1] Based on this "plain meaning" of the word "retain", the State contends that the legislature intended that theft by receiving be a continuing offense.

Courts from various other jurisdictions have found this argument convincing. In particular, the courts of Oregon[2] and Hawai'i[3] have construed their theft by receiving statutes as defining continuing offenses—primarily because the words "retain" and "conceal" normally connote continuing activities. These decisions from Oregon and Hawai'i are particularly noteworthy because, according to

the drafters of Alaska's criminal code, the theft statutes of those two states were among the primary sources for Alaska's theft provisions.[4]

Despite this support for the State's argument, the legislative history of Alaska's theft statutes indicates that the Alaska Legislature did not intend for theft by receiving to be a continuing offense.

*The legislature intended to create one unified crime of theft.*

 The legislative commentary to Alaska's theft statutes (AS 11.46.100–210) declares that the "primary purpose" of this group of statutes was to consolidate all of the common law's disparate larceny and larceny-related offenses (including "receiving stolen property") into one unified crime of "theft".[5] This purpose is most clearly reflected in the language of AS 11.46.100 (the statute defining theft) and AS 11.46.110 (the statute directing the consolidation of all theft offenses for purposes of pleading and proof), as well as in the legislative commentary to these statutes.

AS 11.46.100, the statute defining theft, reads:

**Theft defined.** A person commits theft if

(1) with intent to deprive another of property or to appropriate property of an-

---

1. *See, e.g., Webster's New World Dictionary of American English* (Third College Edition, 1988), which defines "retain" as meaning "to hold or keep in [one's] possession[;] to keep in a fixed state or condition". *Id.*, p. 1145.

2. *See State v. Carlton,* 233 Or. 296, 378 P.2d 557, 558 (1963), *State v. Harelson,* 147 Or.App. 556, 938 P.2d 763, 766 (1997), and *State v. Knutson,* 81 Or.App. 353, 725 P.2d 407, 409 & n. 3 (1986), all construing O.R.S. § 164.095(1), which defines theft by receiving as "receiv[ing], retain[ing], conceal[ing], or dispos[ing] of property of another, knowing or having good reason to know that the property was the subject of theft". *Carlton* held that a person who steals property (*i.e.*, commits theft by taking) can also be separately convicted of theft by receiving if they later "conceal" the property—because concealment is a continuing act. *Knutson* reached the same conclusion. *Harelson* held that, because retention is a con-

tinuing act, a thief who "retains" property after the initial act of theft can be separately convicted for theft by receiving.

3. *See State v. Temple,* 65 Haw. 261, 650 P.2d 1358, 1361–62 (1982), construing HRS § 708–830(8), which defines the crime of theft by receiving as "receiv[ing], retain[ing], or dispos[ing] of the property of another, knowing it has been stolen". *Temple* held that this statute defines a continuing offense because in normal usage the word "retain ... describes an ongoing course of conduct".

4. *See Alaska Criminal Code Revision, Tentative Draft,* Part 3 (1977), Appendix I, pp. 101 & 104.

5. 1978 Senate Journal, Supp. No. 47 (June 12), p. 30.

other to oneself or a third person, the person obtains the property of another;

(2) the person commits theft of lost or mislaid property under AS 11.46.160;

(3) the person commits theft by deception under AS 11.46.180;

(4) the person commits theft by receiving under AS 11.46.190;

(5) the person commits theft of services under AS 11.46.200; [or]

(6) the person commits theft by failure to make required disposition of funds received or held under AS 11.46.210.

At first blush, AS 11.46.100 may appear to define six different ways of committing theft (including "theft by receiving as defined in AS 11.46.190"). But the legislature did not intend the statute to be construed this way. In its accompanying commentary, the legislature declared: "It is important to note that the conduct described in [sections (2) through (6) of the statute] do[es] not define separate crimes." [6] (Emphasis added)

As we held in *Cheely v. State* [7], the definition of theft contained in section (1)—obtaining the property of another with the intent to appropriate the property or deprive someone else of the property—was intended to be a general definition of the offense, encompassing the five other listed forms of theft. As stated in the commentary to the Tentative Draft, the other five sections of AS 11.46.100 were included "as a concession to the potential hold of tradition". [8]

The definition of "obtain" codified in AS 11.46.990(11) includes any "exert[ion of] control over property of another". As we noted in *Cheely*, the legislature's broad definition of "obtain" "extends the concept of taking to include constructive acquisition of property". [9]

Thus, theft by asportation and theft by receiving are not distinct offenses under Alaska's theft statutes. [10]

This same legislative purpose to consolidate all forms of theft into one unified crime is evident in AS 11.46.110, the statute governing the government's pleading and proof in theft cases. Section (b) of this statute declares, "[a]n accusation of theft is sufficient if it alleges that the defendant committed theft of property or services ... without designating the particular way or manner in which the theft was committed." The drafters of Alaska's criminal code declared that this statute was meant to "to underscore one of the chief aims of the theft article: elimination of the confusing distinctions among the most typical theft offenses in existing law." [11]

Ironically, the drafters of Alaska's theft statutes quoted extensively from a commentary written by the primary drafter of the Oregon Revised Criminal Code to show the necessity for enacting a consolidated pleading and proof statute like AS 11.46.110. The quoted portion reads:

As noted by the Model Penal Code reporters, despite the substantial consolidation of ... theft offenses, ... the tendency to cling to the old categories is so strong that it is considered advisable to state expressly what logically follows [from the consolidation of all theories of theft into one general crime]. [This] special section detail[s] the procedural consequences of the consolidation of theft offenses.... A general allegation that the defendant committed theft of property of the nature or value required for the commission of the particular crime will be supportable by proof that [the defendant] engaged in conduct constituting ... common law larceny, "embezzlement", "theft by receiving", or some other type of thievish conduct.

**6.** 1978 Senate Journal, Supp. No. 47 (June 12), p. 30.

**7.** 850 P.2d 653, 659 (Alaska App.1993).

**8.** *Alaska Criminal Code Revision, Tentative Draft,* Part 3, p. 19.

**9.** *Cheely,* 850 P.2d at 659 (quoting 1978 Senate Journal, Supp. No. 47, p. 31).

**10.** *See id.* at 659, 662–63.

**11.** *Alaska Criminal Code Revision, Tentative Draft,* Part 3, p. 22.

*Alaska Criminal Code Revision, Tentative Draft*, Part 3, pp. 22–23 (quoting Paillette, *The Oregon Theft Laws: Consolidation v. Conglomeration*, 51 Oregon Law Review 525 (1972) (internal quotations omitted)).

The Alaska drafters' reliance on Paillette's commentary is ironic because, as explained above, the Oregon courts (without acknowledging Paillette's commentary or any other commentary on the Oregon statutes) have construed Oregon's theft by receiving statute to define a separate (and continuing) offense. As the Oregon courts have construed their law, the original thief can be prosecuted and convicted separately for later "concealing" or "retaining" the stolen property.[12] Although we must leave construction of Oregon's statutes to the Oregon courts, such a result seems directly at odds with the Alaska Legislature's expressed intention to consolidate all theft offenses into one unified crime of theft for purposes of pleading, proof, and punishment.

In our prior decisions, we have recognized and implemented this legislative purpose. For example, in *Cheely* and in *Williams v. State* [13], this court held that an indictment charging "theft" under the general definition codified in AS 11.46.100(1) necessarily encompasses the other five forms of theft. Thus, a trial jury can convict the defendant under a "receiving" theory even though the State's theory of prosecution is that the defendant personally stole the property.[14]

In sum, the extensive legislative history of Alaska's theft statutes ineluctably leads to the conclusion that the Alaska Legislature did not intend to create a separate offense when they codified "theft by receiving" in AS 11.46.190. Rather, the legislature viewed "theft by receiving" as simply a subset of the general definition of theft codified in AS 11.46.100(1). From this, we infer that the legislature deemed the various acts described

in the theft by receiving statute ("buying", "receiving", "retaining", "concealing", and "disposing of" property) to be only particularized forms of "obtaining" property—an act defined in AS 11.46.990(11) as "exert[ing] control over property" in any fashion.

*The word "retain", as it is used in Alaska's theft by receiving statute, does not refer to a continuing course of conduct.*

■ The fact that the legislature intended AS 11.46.100–210 to create a unified crime of theft suggests that we should not construe the word "retain" in AS 11.46.190 to create a continuing offense—for such a construction would make theft by receiving distinct from the other varieties of theft defined by the legislature. Nevertheless, the word "retain" normally connotes a continuing activity. Could the legislature have used this word and still have been contemplating a non-continuing offense? The answer is yes, and the explanation is found in the commentary to the Model Penal Code.

The Model Penal Code was the progenitor of all the modern theft statutes (like Oregon's and Alaska's) that create a unified crime of theft, eliminating the common-law distinctions among larceny and larceny-type offenses.[15] Like Alaska's theft statutes, the Model Penal Code contains both a general definition of theft, § 223.2(1), and a definition of receiving stolen property, § 223.6(1).

The Model Penal Code's general definition of theft is broad like Alaska's. Model Penal Code § 223.2(1) declares that a person is guilty of theft if the person "exercises unlawful control over ... property of another with purpose to deprive him thereof." This Model Penal Code provision appears to be the source of the definition of "obtain" codified in AS 11.46.990(11)—"to exert control over property of another".

And, like the definition of "theft by receiving" found in AS 11.46.190, the Model Penal

---

12. *See* note 2.

13. 648 P.2d 603 (Alaska App.1982).

14. *See Cheely*, 850 P.2d at 661; *Williams*, 648 P.2d at 606.

15. *See* W. LaFave & A. Scott, *Substantive Criminal Law* (1986), § 8.8(d), Vol. 2, pp. 414 n. 22, 415.

Code's definition of "receiving stolen property" also uses the word "retain" to define the *actus reus* of the offense. Model Penal Code § 223.6(1) states: "A person is guilty of theft if he purposely receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless [the person's] purpose [is] to restore it to the owner."

A third similarity between Alaska law and the Model Penal Code is that the drafters of the Model Penal Code viewed receiving stolen property as merely a subset of the general crime of theft. In their commentary to Model Penal Code § 223.6, the drafters cataloged the different formulations of receiving stolen property enacted by various legislatures [16], and they concluded that "the essential idea" behind all of these formulations was "acquisition of control, whether in the sense of physical dominion or of legal power to dispose".[17] Because of this, the drafters did not view receiving stolen property as distinct from the general definition of theft: "Analytically, the receiver [of stolen property] does precisely what is forbidden by [the general definition of theft contained in] § 223.2(1)— namely, he exercises unlawful control over property of another with a purpose to deprive." [18]

But, unlike Alaska's commentary, the Model Penal Code commentary contains an explicit explanation of what the drafters meant when they used the word "retain" to define the crime of receiving stolen property. In their commentary, the drafters of the Model Penal Code explain that they used the word "retain" in their definition of receiving stolen property so that the statute would cover situations where a defendant innocently takes possession of stolen property or otherwise exercises control over stolen property, unaware that it has been stolen, and then later learns the true origin of the property:

> By defining "receiving" to include the retention of possession, the Model Code . . .

makes it possible to convict a person who receives [property] without knowledge that the goods were stolen but who, upon learning of their status, nevertheless resolves to keep or sell them.

*Model Penal Code*, Part II, commentary to § 223.6, p. 235.

In other words, "retain" is not being used in its usual sense of an ongoing, continuing possession. Rather, the Model Penal Code drafters used "retain" to describe a defendant's action at a particular point in time— the time when the defendant acquires the culpable mental state required for theft (awareness that the property is probably stolen). At that time, the defendant must decide what to do with the property. If the defendant's decision is to keep it, the defendant has "retained" the property, and the crime of receiving is now complete.

Alaska's definition of burglary contains an analogous use of language. Under AS 11.46.310(a), a person commits burglary if the person "enters or remains unlawfully in a building with intent to commit a crime in the building". "Remains" (like "retains") is a word that normally suggests continuing conduct. But in *Shetters v. State* [19], this court rejected the contention that a person "remains unlawfully" in a building whenever the person steals property from the building. Instead, we clarified that even though a defendant unlawfully remains in a building and thereafter commits a crime in the building, the defendant will have committed a burglary only if they had the intent to steal at the time their presence first became a trespass:

> If [a defendant does] not have an intent to steal at the time his presence on the premises first [becomes] unlawful, he [can] not be convicted of burglary. The intent to commit a further crime must co-exist with the initial criminal trespass[.]

*Shetters*, 751 P.2d at 36 n. 2.

Thus, for purposes of the burglary statute, the defendant's act of unlawfully "remaining"

---

**16.** American Law Institute, *Model Penal Code and Commentaries* (1980), Part II, commentary to § 223.6, pp. 234–35.

**17.** *Id.*, p. 235.

**18.** *Id.*, p. 232.

**19.** 751 P.2d 31 (Alaska App.1988).

is not continuing conduct. Like the word "retains" in the theft by receiving statute, the word "remains" in the burglary statute refers to a particular point in time: the time when the defendant's privilege to be in a building expires and the defendant must decide whether to leave or stay. If the defendant decides to stay, the defendant "remains unlawfully". If, at that time, the defendant has the intent to commit a crime in the building, then the defendant has committed burglary. But if the defendant remains unlawfully in the building with no intent to commit a crime, and does not form the intent to commit a crime until later, there is no burglary. In this context, "remains" does not refer to a continuing action.

We therefore conclude that, when the Alaska Legislature used the word "retains" in the theft by receiving statute, the legislature was not referring to the defendant's entire, continuing possession of stolen property. Rather, like the drafters of the Model Penal Code, the legislature used "retains" to refer to the defendant's conduct at the time the defendant becomes aware that property in their possession is probably stolen.

*Conclusion: Theft by receiving is not a continuing offense.*

We admit that the State has plausible arguments why the theft by receiving statute might be construed as creating a continuing offense. However, the legislative history of the statute demonstrates that the State's arguments are not as strong as they might first appear. Having examined that legislative history, we conclude that the legislature did not intend theft by receiving to be construed as a continuing offense.

Moreover, even if we believed that the proper interpretation of the statute was in doubt, we would nevertheless be obliged to follow the rule of construction codified in AS 12.10.030: a criminal statute should not be construed as creating a continuing offense unless it "plainly appears" that the legislature intended to define the offense as a continuing course of conduct. At best, the State's arguments show only that the proper construction of the statute is reasonably debatable. This being so, we must rule against the contention that theft by receiving is a continuing offense.

Saathoff committed the offense of theft by receiving in 1988, when he discovered that the antique rifle was most likely stolen but he nevertheless decided to keep the weapon. Under AS 12.10.010, the State had five years to commence a prosecution against Saathoff for second-degree theft. That five-year period expired in 1993. Because the prosecution against Saathoff was not commenced until 1997, the superior court should have granted Saathoff's motion to dismiss the charge for it was barred by the statute of limitations.

The judgement of the superior court is REVERSED.